UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOVALDO JOSE GAMARRO GAMARRO,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden, Imperial Regional Detention Facility; GREGORY J. ARCHAMBEAULT, Acting Field Office Director, United States Immigration and Customs Enforcement, ICE San Diego Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; and PAMELA JO BONDI, Attorney General,<br><br>　　　　　　　　　　　Respondents. | Case No.:  26-cv-0650-GPC-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS.**<br><br>**[ECF No. 1]** |

    Before the Court is Petitioner Leovaldo Jose Gamarro Gamarro's petition for a writ of habeas corpus. ECF No. 1. For the reasons outlined below, the petition is GRANTED and Respondents are ORDERED to release Petitioner from custody IMMEDIATELY.

1

# BACKGROUND

Petitioner is a citizen of Venezuela. ECF No. 1, ¶ 3. Petitioner entered the United States on August 22, 2022. *Id.* He was briefly detained and placed in full removal proceedings under 8 U.S.C. § 1229(a). *Id.* Petitioner was released on his own recognizance on August 24, 2022. *Id.* ¶ 96; *see also* ECF No. 5, at 3 n.1.

After his release from custody, Petitioner relocated to Dallas, Texas, where he resides with his partner and child. *Id.* ¶ 4. On June 28, 2023, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal with the United States Immigration Court in Dallas, Texas. *Id.* ¶ 4. On September 18, 2024, Petitioner filed a Form I-821 Application for Temporary Protected Status ("TPS"), which the Department of Homeland Security ("DHS") approved on December 12, 2024. *Id.* ¶¶64-65. DHS has also granted Petitioner employment authorization. *Id.* ¶ 65. Petitioner has complied with directives of DHS to appear for required appointments with the agency and has no criminal history. *Id.* ¶ 5.

On October 8, 2025, United States Immigration and Customs Enforcement ("ICE") detained Petitioner during a routine supervision appointment at the ICE Dallas Field Office in Dallas, Texas. *Id.* ¶ 6. He was transported to Prairieland Detention Center in Alvarado, Texas and later transferred to the Imperial Regional Detention Facility in Calexico, California. *Id.* Petitioner remains in ICE custody. *Id.* ¶ 7.

On February 2, 2026, Petitioner filed a petition for writ of habeas corpus requesting his immediate release from custody. *Id.* at 73.[1] Specifically, Petitioner argues that his current detention violates the Immigration Nationality Act (INA) and his Fifth Amendment substantive and procedural due process rights *Id.* ¶¶ 77-115.

---

[1] Page numbers are based on the CM/ECF pagination

On February 6, 2026, Respondents filed a response to the petition. ECF No. 5. Petitioner was given until the end of February 10, 2026, to file a traverse. *See* ECF No. 3. While the Court acknowledges that the time to file a traverse has not yet passed, upon review of the Petition and Response, the Court finds that additional argument is not necessary to inform its decision.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## DISCUSSION

Petitioner argues that his re-detention without cause violates the Due Process Clause of the Fifth Amendment. The Court agrees.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

1   As applied to cases like Petitioner's: "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was previously released from DHS custody on his own recognizance, ECF No. 1, ¶ 96; ECF No. 5, at 3 n.1, he maintained a protected liberty interest in remaining out of custody. The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481.

"The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what

1  procedures are required by due process, the Court evaluates the three-part test set forth in
2  *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514,
3  at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the
4  risk of an erroneous deprivation" without additional procedures and "the probable
5  value . . . of additional or substitute procedural safeguards," and (3) the "Government's
6  interest, including the function involved and the fiscal and administrative burdens imposed
7  by the additional procedures." 424 U.S. at 335.

8  As to the first *Mathews* factor, Petitioner has a significant private interest in his
9  continued liberty. Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12;
10 *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

11 Turning to the second *Mathews* factor, "it is clear that there is a significant risk that
12 the government will erroneously deprive [Petitioner] of that liberty interest if it does not
13 provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as
14 here, Petitioner has not received any bond or custody hearing upon his re-detention, "'the
15 risk for erroneous deprivation [of liberty] is high' because neither the government nor
16 [Petitioner] has had an opportunity to determine whether there is any valid basis for [his]
17 detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D.
18 Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be
19 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory
20 purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL
21 3014274, at *8. By releasing Petitioner in 2022, immigration officers determined that he
22 was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL
23 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have not alleged that there
24 has been a change in circumstance since Petitioner's 2022 release. *See* ECF No. 5. Thus,
25 the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no
26 evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly,
27 this factor also favors Petitioner.

28

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). There is also no concern that a hearing will delay or obstruct Respondents efforts to remove Petitioner, as Petitioner has already been placed in full removal proceedings. *See* ECF No. 1, ¶ 3; *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. In sum, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15.

Immediate release is the appropriate remedy in this case.[2] Respondents, in their response to the petition, acknowledge that Petitioner is detained subject to 8 U.S.C. § 1226 rather than § 1225, and concede that Petitioner is entitled to an order from this Court requiring a bond hearing. ECF No. 5, at 3. However, for the reasons discussed above, a bond hearing is insufficient to cure the due process violations faced by Petitioner. Respondents have failed to address Petitioner's due process arguments or acknowledge that Petitioner has been re-detained without cause after being released on his own recognizance. Accordingly, the Court is not persuaded by Respondents' arguments and instead orders Petitioner's release.

## CONCLUSION

Based on the reasoning above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as to Petitioner's requested release from custody.
2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody. Respondents **SHALL NOT** impose any additional

---

[2] Having reached this conclusion on Petitioner's due process claims, the Court declines to fully evaluate Petitioner's INA claims regarding his Temporary Protected Status. ECF No. 1, ¶¶ 77-88.

However, the Court notes that The Ninth Circuit recently affirmed a district court's finding that Respondent Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitains. *See Nat'l TPS All. v. Noem,* --- F.4th ---, 2026 WL 226573 at *1 (9th Cir. 2026) ("The Secretary's actions fundamentally contradict Congress's statutory design, and her assertion of a raw, unchecked power to vacate a country's TPS is irreconcilable with the plain language of the statute."). Although the Court does not discuss Petitioner's TPS claims in this Order, the Court finds that recent Ninth Circuit authority supports Petitioner's position.

restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.[3]

**IT IS SO ORDERED.**

Dated:  February 10, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act. ECF No. 1, at 74. That request is DENIED without prejudice. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.